Centennial Bankshare versus Utah case number 19-4092 and Mr. Baird you're appearing from the appellant. Yes your honor. You may proceed when you're ready. Thank you your honors. May it please the court my name is Bruce Baird I'm counsel for the appellants. You'll pardon me I've got to have voice surgery so I've lost a cut out. I apologize. In 1961 Justice Black dissents in the St. Regis paper case on other grounds so the government should turn square corners in dealing with the people. This case is a case about the government not turning square corners with the Centennial Bank but this appeal specifically is about Utah's rather confusing equitable discovery rule on tolling of statute of limitations and I say confusing and I'll get into the case law in a minute. Essentially the theory of the state and the district court is at any time a lay person gets a order of the court affecting their rights in a way that hurts them and that order is sealed the person is most supposed to immediately lawyer up immediately believe that there was something done wrong in the state district court and fight tooth and nail and if they don't do that immediately immediately presume that the government has acted in bad faith through the court system then I don't know I don't know how immediate it has to be it has to be within the statute of limitations right that that's correct your honor and what they're saying individual the individual that received information here was not just someone walking down the street you know as you say a lay person true this individual was not an attorney this person was the president of the bank and he had been as others involved in the bank's management had been warned that the bank was insolvent and they were looking at closing it absolutely true so they knew this train was coming absolutely when it came they knew that they were seized they knew they were injured absolutely true you think these professional business persons did not have some kind of duty to inquire I believe that they did not have a duty to inquire to that a juror that a reasonable jury could have found that they did not have a duty to inquire given that the court's filings were sealed given that the paperwork that was in front of them was taken away from them once they signed the notice of acknowledgement etc so yes you're right was that was the president or other persons involved in the bank management aware of where the documents were that were sealed aware of the name of the court that closed the bank yes your honor they were so wouldn't that be the logical place to go inquire well if they had gone and inquired about your honor they would have found that the file was sealed there's no question that they would have found that the file was sealed they wouldn't have found that the sealed file was supposed to have been opened on its own three days later was supposed to have been unsealed and the reason they wouldn't have found that is because the file itself saying that it was supposed to be unsealed was sealed so what they're being faulted for is not knowing what they didn't know because they couldn't know because it was sealed but your honor let me be clear could jury under these facts have found that my clients failed to exercise reasonable diligence and we're not in fact disabled I will absolutely 100% agree with you that a court the jury could have found that as a matter of fact but all of us who have tried cases know that a reasonable jury can do things that we don't expect them to do anyone who's tried a case who didn't think they could lose it but actually lost it or win it but didn't think they could win it going in hasn't tried enough cases so to say that no reasonable jury would remember that's the standard to say that no reasonable jury could have found that we exercised you're speaking of this as though it's a motion to dismiss it's a motion for summary judgment absolutely I understand that your honor and what I'm asking you to do is take a look at the reverse case sort of the case that you just heard a minute ago assume for the moment that judge Shelby had ruled the other way the district court had ruled and let us go to trial assume for the moment that we put on our best case which is what we're entitled to put on which we're entitled to have the district court believe up front assume we put on our best case assume that a reasonable jury had found that we were in fact disabled and hadn't slept on our rights assume those things assume that the judge Shelby had denied a motion for J. N. O. V. or a motion for new trial and we were in front of you with the state claiming that the court shouldn't have allowed the evidence shouldn't have allowed it to go forward and that the jury was per se wrong in making its findings that we in fact were disabled and did our best you know better than I do because this is what you see all the time the standard of review on overturning a judge's refusal to grant a J. N. O. V. or a motion for new trial it's extremely hard this case should have gone to the jury I'm not claiming and would would be crazy to claim that a jury couldn't have found the other way absolutely the state can make a very good case well wouldn't your argument then work for any case every case should go to trial because gosh we just don't know what that jury is going to do we've seen cases just turn out very differently than we anticipated no I don't I don't believe so your honor because this the Utah Supreme Court applying the law that we're we've talked about here basically says that the question on on toll on equitable tolling is a and this is the Myers case is a balancing test of harm to the parties there's no balancing test of harm you there's no issue of what's going on the the documents were in fact sealed they show the the only the pleadings in front of the district court are where the error is the question is what evidence do we have a disability we showed that the testimony was that in 2014 my clients as soon as they found out from a whistleblower at the FDIC that there had been something wrong as soon as he found that out my clients actively sought to get the documents they sought them from let me stop you for just a minute I want to know when when did your client find out that the documents were sealed and not through a hearsay source from going to the court and someone at the court saying that sealed I don't have evidence on the question when they went to the court to find that was sealed your honor remember the paperwork was taken away from my clients as part of this action they had no reason to believe that the files at the district court were done were excuse me that the district court had acted inappropriately until they were told that they had acted inappropriately by the whistleblower well I mean did your clients agree at the time that their bank should be taken away from them of course not your honor okay I mean so I mean if you're of the position that this is unjust proceeding in the first place they were represented at the time and they believe that their bank shouldn't have been taken away I mean doesn't that put them in a position to go to the go to the court right then to see what's being said about them you're all right I won't dispute that my clients could have done things differently I'm not going to dispute that I'm going to be we're trying to figure out from an equitable standpoint what they should have done and equity sort of you know brings up reason and what they have to do to me to get equity is they have to have acted in a reasonable and equitable manner themselves not being diligent is a problem for them it seems absolutely your honor it is a problem I absolutely understand it's a problem well my point is it is not a fatal problem on a motion for summary judgment the Utah Supreme Court has held in look at the case it's it's a factual determination according to Alki versus Lamer and and I would agree that it's a factual determination I've been very candid with the court that my clients could lose this we didn't seek summary judgment on the fact that we were diligent in fact we we have the we would have gotten it if we miss I we didn't get it and we wouldn't have gotten it because there is a factual issue the question isn't whether we could have won or could have lost the question is could a reasonable jury have won on a question of fact and if you take a look at the facts the facts are that my clients were shell-shocked when they got when they were literally stormed with armed guards their bank was taken away from them they have a court order authorizing it you're right I assume they could have gone in and fought harder the question isn't whether they could have fought harder and that's what I said right at the start when Judge Briscoe ask her my point was that given the facts at the time but is my client being faulted for not immediately or even in four years lawyering up and assuming that a district court in the state of Utah had done something so wrong as to be a 1983 violation and I understand the high standard of 1983 I understand the standard visibility the point here is that we were denied the chance to at least try to make our proof at the district court the trial you're arguing here as I understand that you needed the documents that were sealed in order to file your lawsuit yes your honor because without the suit file your lawsuit without those documents we filed a lawsuit under different grounds when we got that with the lawsuit was filed basically to get the documents and they're different under different grounds when we got the documents we immediately amended to bring the 1983 action so did you know anything in addition from those documents that you didn't know when you initially filed your lawsuit absolutely what we want to hear on what we knew your honor is that the state had done nothing to satisfy its statutory burden under Utah law to seize the bank it was a star chamber proceeding basically the state says we win judge the judge says okay you win it's ex parte many of the legal standards that are required under state law for seizure of the bank weren't even attempted to be met the state did nothing to meet its burden at the district court except to tell aren't ex absolutely your honor but they have to comply with statutory grounds and the documents that we subsequently undiscovered indicated that the state did nothing to meet the statutory grounds for taking over the bank except to say we meet the standards for taking over the bank judge they didn't really put on any evidence they did nothing and we didn't know that and couldn't have known that until the files were open may I reserve the unless you first so happy to answer your question it sounds like you're the problem you have is what the state court ex parte judgment not necessarily I mean you're whether the state satisfied its burden in front of the court I mean how does that get you a 1983 claim well that's a different issue your honor and I can tell you we have a parallel case for another bank and not a different United States District Court judge has gotten us over qualified immunity on that case it's not relevant but those it's that's not relevant to the issue whether we should have gotten at least try your honor if I've answered your question I'd like to reserve the the final two minutes if I may sure you may let's hear from mr. Peterson thank you your honor may please support Cliff Peterson a Utah Attorney General's office we believe the district court correctly concluded that no reasonable juror could have found that this plaintiff had acted reasonably that they basically slept on their rights and if you look at page 15 of their opening brief their own timeline now on appeal they jump from shortly after the bank is seized to four years later with this happenstance meeting on a ski lift I mean really if you take their argument to the logical extreme that discussion on the ski lift could have happened 20 years later and yet they still get around all statute of limitations just because some happenstance meeting on a ski lift triggers additional so first of all I don't think that that argument should carry the day they failed to meet their initial burden to show that any initial disability when the bank was seized on March 5th of 2010 they knew that the bank had been taken away from him that they objectively knew this definitive fact and also in response to what my colleague just said if this was so draconian and stressful wouldn't that have even prompted more due diligence and so if this was so stressful and so shocking we think that that would have alerted the plaintiff to even more action rather than sleeping on their rights for four years so they slept on their rights and that's what the Utah Supreme Court's cases talk about we're not going to allow equitable tolling to rescue a plaintiff who unreasonably sleeps on their rights we believe the district court correctly assessed all the undisputed record evidence and as a matter of law determined that no reasonable juror could have concluded otherwise this was no surprise to the bank in 2019 they stipulated to a cease-and-desist letter on this very issue under capitalization there's some serious problems with this bank and then again in January just before the bank was seized two months before the bank was seized they received the FDIC report again showing serious concerns about under capitalization Scott priest one of the officers of the bank testified in his deposition that he disputed both of those well if you dispute both of those and comes and closes your bank in March of 2010 if you believe that they were wrong and you were right don't you do something about it why would you capitulate why would you do nothing so the record speaks for itself the facts we believe speak for themselves and the because and really they that's that's what plaintiff can stipulates in their opening brief the issue is about this release to parties after the bank seizure we don't know your honor that there's definitely no evidence that my client did anything to conceal that perhaps it was this is me speculating but perhaps of a ministerial error on the part of the second district court just slipped through the cracks or whatever we don't we don't really know but by its own terms it was only supposed to be sealed for three days and that very limited time period was for a very discreet reason and that's you do this on a Friday afternoon so you people don't run you know the court can take judicial notice of the problems that are run on a bank and cause but it's only sealed for three days let the FDIC take over receivership and then the bank is over the weekend they can they can do what their best to hopefully reopen on a Monday morning and there's no not complete chaos which is what in this situation well presumably the bank has the opportunity to contest or appeal the seizure order right absolutely what should the bank have done in this case if they felt that the seizure was in bad faith or unjust absolutely they should have gone to the second district court and they should have objected to the closure that they were given notice they signed Clint Williams the scientists actual notice and we're gonna just throw out actual notice and let that stand in limbo for years so they received actual notice of that the note the notices in addition to that even if he was shell-shocked and and we're gonna let him be relieved of his own signature there were notices placed on all the branch doors that said the second district court has authorized the closure of the bank they knew the court to go to they could have gone and they should have gone if they really believe the FDIC was wrong and the Department of Financial Institutions was wrong and that there was not an app under capitalization problem existing for months and months they should have objected they should have filed something in the second district court within the 10-day statutory time period and challenged that counsel what's there what's the evidence in the record about their representation by counsel at the time there they there yes they acknowledge we've mentioned your opening brief that they acknowledge that they communicated through counsel they had counsel at the time so so these are sophisticated business professional but businessmen with counsel we think it's it would be a disservice to the equitable tolling case law to allow them to sleep on their rights with counsel and and basically indefinitely suspend the running of limitations when they knew the bank was seized they knew the court that had done that and they knew where to go to get more information does that answer the court did was the court asking for a specific record record site no I just wanted to know what was in what was in the record particularly about that yes the there was acknowledged that the bank officer said we've only communication after the bank was closed was through counsel he acknowledged he had counsel and also in the deposition testimonies there was a statements made that they had counsel they actually said they hired an attorney after the closure of the bank who went to the bank after the closure to try to obtain more information we reference do we have a debate as to whether or not the president in fact retained the documents that were served on him when the bank was seized we know that he walked away and did not take anything he said in his deposition this is in the appendix pages 139 140 and 141 and 142 he was told not to take anything with him he was told he could come back and collect his personal belongings when he was pinned down on deposition about the specific documents the documents of notice he said well they're on the desk and when he was asked what do you mean when you said you caught they confiscated this kind of Gestapo military force comes in and takes over your bank tyrannically what what did they he said well confiscated it was on the desk and I was told I could come back and get my personal belongings but it didn't I his personal assistant told him so I don't want to go back just bad memories I don't want to go back he chose not to go back to get anything the documents he left on his desk his personal belongings he goes on at length in his deposition about his personal photos and his other private belongings but he did not go back he turned a blind eye did not go back and I don't think he should benefit by me being able to say I can escape the legal consequences of actual notice case number case name 10-day notice that I can escape was the notice was the notice to the seizure was that only given that is the notice that told him that he had he could go to this particular court noticed of need to seek judicial relief that notice was it only only a document or was it in fact orally told to him I believe as I recall he was explained to him that he could but at the very least it was in writing it did say you can did he did he recall or state that he was orally told where he didn't go to seek judicial relief his testimony was he didn't really remember anything his testimony was so shell-shocked he didn't remember a thing whether he was told it or whether he read it whether he signed without reading whatever he his testimony was he did not remember but by its plain language the notice this is in the record in the appendix at page 298 it says I went to the second district court we were counting I got an order from that court and that is legal notice that's sufficient to place them on notice of where they could go if they had conducted any due diligence instead of sleeping on their rights for four years the district court correctly applied the undisputed record evidence to this case and was correct and if there are no further questions we will submit it thank you counsel we'll accept that session of your time and Mr. Baird has some rebuttal time thank you your honors I appreciate Mr. Peterson's argument the trouble is that the notice of seizure and the notice on the doors is not the same thing as notice that there was a wrongfulness a fact of wrongfulness those were contained those facts of wrongfulness were contained only in the sealed records now I will acknowledge what do you think we what should we expect under Utah law for a duty to inquire your honor I I believe that I'm sorry your honor your audio cut out for a second investigation I'm sorry your honor your audio cut out for just a second um when was the duty of inquiry triggered here the duty of inquiry I think is a factual question your honor that a jury could determine uh again there there is no argument that my clients could have done more the question is not whether they could have done more the question is whether they're going to be penalized and by summary judgment for not having done what someone else would have done what your honor may have done what I may have done I was not counsel for the bank at the time I may have done things differently but when the documents are confiscated from Mr. from the bank officer uh then that's in a record at uh appendix 73 paragraph 9 uh citation is a 138 lines 38 4 to 40 20 when the documents are confiscated and you don't have the documents yes you could have gotten them later but even if you'd gotten the base documents of the seizure or you had read them on the door of the bank that's not the same thing as being able to see the sealed file where the inappropriate conduct of the court and the state was buried and with that my time has expired I'd be happy to take any more questions if the court wants to ask any more I have only I have only one question are you in Monterey no your honor that's my house in are you there which I can't know I wish I were your honor but they won't they won't let people from uh Utah with rising cases in there I'm trying my best to get there your honor well thank you you made me feel better I thought you were someplace wonderful all right your honor I really wish I were I wish I had my swim shorts underneath this uh suit and tie but unfortunately I'm I'm in the same predicament that we all are at the moment with thank you one last question I've written a lot of chairlifts in my day yet I've never encountered a whistleblower you know your honor the weirdest part is I understand that but it happens you know 15 years ago I was in London getting off a train to make a phone call and I stepped off the train and a woman was struggling to get her suitcase on the train and she looked up at me and I helped her with her suitcase there's a woman I had a blind date with in Utah two weeks earlier coincidences happen your honor and not just in novels and movies all right well I appreciate that counsel we appreciate the arguments I think we understand your positions you are excused and the case shall be submitted